Daniel J. Coyne and Richard J. Coyne, trading as Coyne Brothers, Appellees, v. Oregon Short Line Railroad Company, Appellant.

Gen. No. 31,461.

1. CARRIERS—*when railroad cannot be held liable as warehouseman.* A count in assumpsit for damages for a common carrier's negligent handling of a shipment as warehouseman is not sustained by evidence showing that the shipment was delivered to the consignee before the arrival of the time, prescribed by the bill of lading for the carrier's liability as warehouseman to begin.

2. CARRIERS—*when delay in delivery of freight excused by congestion at point designated for delivery.* Although before a shipment is accepted a common carrier must notify shippers of any inability to move goods in the regular course to a certain point, yet consignment to "Chicago, Illinois," will not make the carrier liable for failure to deliver the shipment on time in Chicago to one station of congested delivery demanded by consignee out of many stations of free delivery in the city.

3. CARRIERS—*construction of shipper's instruction as to place of delivery.* A shipper's instructions to a common carrier to advise the consignee of a shipment to Chicago cannot be construed to mean that the shipment was to be made to any particular station in Chicago even though one station was the customary receiving point of the consignee, and hence the carrier cannot be held liable for failure to deliver to that point in schedule time upon notifying the consignee of congested delivery there.

4. CARRIERS—*nonliability for delay in delivery where consignee has notice of embargo at point designated.* Consignees who are notified by a common carrier that a certain freight receiving station is under embargo due to congested delivery there before they give any diversion or

reconsignment orders, cannot hold the carrier liable for damages due to delay at that point at which they have demanded delivery after the carrier's notice.

Appeal by defendant from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge presiding. Heard in the second division of this court for the first district at the October term, 1926. Reversed with a finding of facts. Opinion filed May 17, 1927. Rehearing denied May 28, 1927.

JOHN A. SHEEAN, for appellant.

J. V. DELANEY, for appellees.

MR. JUSTICE FITCH delivered the opinion of the court.

This appeal is from a judgment against defendant for $85.43, the agreed amount of the loss sustained by the plaintiffs through the alleged negligent handling of five interstate shipments of potatoes. The trial was before the court without a jury and most of the essential facts were stipulated, although some evidence was heard in addition to the stipulation.

The shipments in question were made from points on the line of defendant's railroad in Oregon and Idaho. The first carload was shipped on September 5, 1923, the second on September 11, 1923, and the last three on September 13, 1923. The shipper was the California Vegetable Union, and two of the cars were consigned to itself at North Platte, Nebraska, and three to itself at Denver, Colorado. While in transit, all were "diverted" and reconsigned by the shipper to itself at Chicago, with directions to "advise Coyne Brothers." In the reconsignments, the cars were routed over the Chicago & Northwestern Railway. In making these reconsignments, the specified destination was "Chicago, Illinois," without designating any particular team track in that city, although there were 25 places in Chicago at which there were team tracks ordinarily available for the delivery of such shipments.

The stipulation states that the customary track for the delivery of potatoes handled by the Northwestern was at Grand Avenue, and it was shown that in July, 1922, plaintiffs had sent a written request to the Northwestern "to forward all cars of potatoes billed to Coyne Brothers straight or to shipper's order, notify or advise Coyne Brothers, to Grand Avenue team track," and that the Northwestern had acknowledged receipt of that letter, stating that it "will be governed accordingly," and had acted upon that request.

It was stipulated that all the shipments were handled without negligence, over the prescribed route, to Proviso, Illinois, where the outer Chicago yards of the Northwestern Railway are located, and all arrived there on schedule time. As each car arrived at Fortieth Street, Chicago (a distributing yard of the Northwestern located 10 or 12 miles east of Proviso), an arrival notice was given to plaintiffs, who, on the same day, instructed the Northwestern to reconsign the car to the Grand Avenue team track. At that time, and for some time prior thereto, there was a congestion of potato shipments at Grand Avenue and such shipments were sent to Grand Avenue in the order in which reconsigning orders were received, without dscrimination in favor of any shipper, and the cars involved in this case were sent to Grand Avenue in their turn, in accordance with this practice.

On September 4, 1923 (before the first of these shipments was made), the Northwestern Railway Company published and declared, in the manner prescribed by the Interstate Commerce Commission, an embargo on "all carload shipments of potatoes consigned to, for reconsignment to, or intended for delivery on any specified or designated team tracks at Chicago," unless such carload shipments were "waybilled to Fortieth Street, Chicago, with notation on waybills and bills of lading—'Subject to such team track delivery as may be available.'" The notice of the embargo, directed

"To all Superintendents and Agents," further stated that the embargo "does not interfere with shipping potatoes to Chicago, but merely means that team track assignment cannot be made in advance of arrival of cars at Fortieth Street." It was shown that this embargo continued during all the time the shipments in question moved and until September 29, 1923, when it was superseded by a tariff to the same effect.

All the reconsignments from the destinations named in the original bills of lading were made during the life of this embargo, and while the stipulation states that the *"shipper or party issuing the reconsignment* in any instance did not have actual, as distinguished from constructive, notice of the embargo in question," an agent of the Northwestern Railway, located at Fortieth Street, testified, without contradiction, that he personally notified the *plaintiffs* of the existence of the embargo "the first day after the embargo came out" (which was before the first reconsignment of any of the cars) and "that cars would go down to Grand Avenue in turn," if plaintiffs would not take any other team track. The same witness also testified that as each of the cars in question arrived at Fortieth Street, he called up the plaintiffs and notified them "that the car was being held for orders," advising them at the same time that on account of the congestion at Grand Avenue, plaintiffs could have the cars taken to any one of several other specified team tracks, but that plaintiffs replied that "they would not take anything else but Grand Avenue," whereupon the witness told them "the car would have to take its turn to Grand Avenue." One of the team tracks so offered to plaintiffs was at Clinton Street, four blocks from Grand Avenue, which had a capacity of 200 cars and was not congested.

It was stipulated that on account of these facts, four of the cars in question were delayed one day each, and the remaining car was delayed two days, and as to

each car, ''that had it not been for the congestion here-inbefore referred to and the said embargo, the car would have arrived at Grand Avenue'' that much sooner, and that by reason of such delays plaintiffs sustained losses aggregating $85.43 on the five cars.

Each of the bills of lading issued by defendant contains a provision that ''no carrier  *  *  *  shall be liable for any  *  *  *  delay caused by  *  *  *  the act or default of the shipper or owner.''

The action is in assumpsit. There are three counts in the declaration as to each of the five carloads in question. The first count in each series alleges that defendant did not carry out its promise to safely and securely carry a specified carload to Chicago, Illinois, and there deliver the same to the plaintiffs. The second of such counts alleges a duty on defendant's part to safely and securely carry the property to Chicago and there deliver it to the plaintiffs within a reasonable time, and that defendant so negligently handled the shipment that by reason of such negligence plaintiffs sustained the damage complained of. The third count of each series is based upon the alleged negligence of the defendant as a warehouseman. There is no evidence to sustain such third counts. It was shown that all the cars were delivered to the plaintiffs before the time prescribed by the bill of lading for the liability of a warehouseman to begin had arrived. We agree with defendant's counsel that the only counts of the declaration to which the evidence applies are the second counts in each series of counts, which expressly charge negligence in not transporting and delivering the shipments within a reasonable time. Under those counts, it being stipulated that the cars were carried without negligence and on schedule time up to the time they reached Proviso, the main question presented is whether the defendant is liable for the subsequent delays.

Upon this question defendant contends that under the circumstances shown by the stipulation and the evidence, the delay was not its fault and could have been avoided by the plaintiffs if they had not refused to accept defendant's offer, made upon the arrival of the cars at Fortieth Street, to send them to the Clinton Street track or some track other than the congested track at Grand Avenue. Plaintiffs contend, and the trial court apparently found, that the defendant was negligent as a matter of law upon the undisputed facts, in failing to notify the shipper of the congestion and the embargo at the time the defendant accepted the diversion orders reconsigning the shipments to Chicago over the line of the Northwestern Railway.

In support of these contentions both parties cite and rely upon the opinion of the Supreme Court of the United States in *Eastern Ry. Co. of New Mexico v. Littlefield*, 237 U. S. 140. That was a suit for damages resulting from the failure of the carriers to furnish cars for the shipment of cattle after a proper demand for the same had been made, and the answer of the defendants to the plaintiffs' declaration alleged that an unprecedented rush of settlers to the southwest had created such an unprecedented demand for transportation facilities of all kinds, including cars for live stock, that the carriers were unable to furnish the cars to the plaintiffs. The court held that defendant's answer did not meet the issue nor set out facts which would constitute a defense to the plaintiffs' alleged cause of action for the reason that the answer indicated that the car shortage was known to the carriers at the time of the plaintiffs' demand for such cars, and made no claim that the cattle company was notified that conditions were such as to make it impossible for the carrier to furnish cars at the time and place designated. This was on the principle that "where, without fault on its part, a carrier is unable

Coyne v. Oregon Short Line R. Co., 244 Ill. App. 359.

to perform a service due and demanded, it must promptly notify the shipper of its inability, otherwise the reception of goods without such notice will estop the carrier from setting up what would otherwise have been a sufficient excuse for refusing to accept the goods or for delay in shipment after they had been received.'' The court said, however, that ''if such notice had then been given to the shipper, or promptly upon subsequent discovery, that the defendants would be unable to supply the cars, a different question would have arisen.''

In the present case, it is obvious there was no duty on the part of the defendant to notify the shipper of team track conditions in Chicago when the shipments were originally made, for at that time the cars were not consigned to Chicago. When they were diverted or reconsigned in transit, the specified destination was ''Chicago, Illinois,'' and not the team track at Grand Avenue, or any other team track. In the absence of any suggestion in the diversion orders that the shipper desired or intended the shipments to be delivered to the plaintiffs at the Grand Avenue team track only, defendant could not reasonably be expected or required to notify the shipper of the congested condition of that track, or of the embargo, especially in view of the fact that so many other tracks in Chicago were available that were not congested. The mere fact that the shipper's instructions at that time were to ''advise Coyne Brothers'' cannot be construed to mean that the cars were to be delivered to any particular team track, even though it had been customary theretofore for the Northwestern Railway Company to deliver cars of potatoes to the plaintiffs at Grand Avenue. Such a custom, even while it was followed, gave plaintiffs no rights superior to those of other consignees to have their cars delivered at that point. But in any event, the custom, if any, was ended by the embargo, and the evidence shows, without dispute, that before any diver-

sion or reconsigning orders were given, plaintiffs were in fact notified of the embargo, and of the consequences of the embargo and congestion at Grand Avenue. This notice to plaintiffs was supplemented by the express warning given to them by the agent at Fortieth Street. Under these circumstances there is no room for plaintiffs' contention, and defendant's contention must prevail.

Having arrived at this conclusion, it will not be necessary to notice the other contentions of appellant. No other ground of liability is shown or claimed, and, therefore, for the reasons stated, the judgment is reversed with a finding of facts.

*Reversed with a finding of facts.*

GRIDLEY, P. J., and BARNES, J., concur.

Finding of facts to be incorporated in the judgment. The court finds that defendant is not guilty of the negligence charged in the declaration, and that loss sustained by the plaintiffs on account of delays in delivering the shipments in question was due to the acts of the plaintiffs.